UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| CARL BERG,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN MCHUGH,<br><br>    Defendant. | Case No. 15-cv-02227-JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |
|---|---|

In this civilian military-worker employment suit, Plaintiff Carl Berg ("Plaintiff") alleges that his employer, the United States Department of the Army ("Army"), run by Defendant Secretary John McHugh ("Defendant"), violated his civil rights when it engaged in retaliatory conduct and ultimately terminated his employment.[1]  Specifically, the five-count complaint alleges that Defendant's conduct constituted (1) gender discrimination under Title VII of the Civil Rights Act ("Title VII"), (2) disability discrimination under the Rehabilitation Act, and (3) reprisal under Title VII and the Rehabilitation Act, and that Defendant violated (4) the Family Medical Leave Act ("FMLA") and (5) the Whistleblower Protection Act ("WPA").  (Dkt. No. 1.)  Now pending before the Court is Defendant's Motion to Dismiss counts two, four, and five of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction.  (Dkt. No. 28.)  After carefully considering the parties' pleadings, and having had the benefit of oral argument on December 10, 2015, the Court GRANTS Defendant's motion.  Plaintiff failed to exhaust his administrative remedies as to the Rehabilitation Act claim, and the FMLA and WPA claims are barred by sovereign immunity.

---

[1] Plaintiff sues Defendant in his official capacity.  (Dkt. No. 1.)

**BACKGROUND**

The following facts relevant to the three claims at issue on the pending motion are taken from Plaintiff's Complaint along with other documents that are either incorporated in or referenced in the parties' submissions or that are matters of public record. *See Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006) ("[I]n a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint.") (emphasis in original); *see also Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 3, 2015) ("In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record.").

## I. **Complaint Allegations**[2]

On or around February 26, 2009, Plaintiff began his second term of employment with the Army. (Complaint ¶¶ 6-7.) At all times relevant to this lawsuit, Plaintiff was a civilian employee for the Nonappropriated Fund Instrumentalities ("NAF employee") and was assigned to work at the Fort Hunter Liggett Military Base in Jolon, California. (*Id.* ¶ 7.) Plaintiff was the manager of Fort Hunter Liggett's bowling center until approximately July 27, 2011, when he received a new assignment as the manager of the Hacienda, a hotel and eatery on the grounds of the base. (*Id.* ¶¶ 8-9, 12.)

After Plaintiff's reassignment to the Hacienda, Plaintiff raised concerns with his direct supervisor, Rick Bosch, about problems with the Hacienda's operations, including health and safety violations, loss of inventory, and insufficient financial reporting. (*Id.* ¶¶ 12, 16, 24-25, 32-34.) Plaintiff also confronted Mr. Bosch about inappropriate conduct, including Mr. Bosch's alcohol consumption and sexual relationships with women at the military base. (*Id.* ¶¶ 14, 21-22, 25.) Although Plaintiff confronted Mr. Bosch about his behavior and raised concerns about the Hacienda's operations on multiple occasions, Mr. Bosch neglected to respond to Plaintiff's

---

[2] Because Defendant's motion pertains to jurisdictional issues and not the adequacy of the claims, the Court does not recount the facts in detail.

concerns (*id.* ¶¶ 25, 32-34, 38); instead, Mr. Bosch, among other things, rearranged Plaintiff's office, changed Plaintiff's schedule, and denied Plaintiff's request for overtime compensation (*id.* ¶¶ 28, 31, 32, 35). Ultimately, Defendant terminated Plaintiff's employment while Plaintiff was on medical leave due to chest pains he had been experiencing for several months. (*Id.* ¶¶ 41-44, 46.)

## II. <u>Administrative Complaints</u>

In January 2012, Plaintiff first contacted the Army's Office of Equal Employment Opportunity ("EEO") about his disputes with Mr. Bosch. (*Id.* ¶ 36; Dkt. No. 29-1 at 2.) At that time, Plaintiff identified two grounds for his grievances: gender discrimination and retaliation. (Complaint ¶ 36; Dkt. No. 29-1 at 3.) Plaintiff's gender discrimination claim was based on Mr. Bosch's disparate treatment of Plaintiff and similarly-situated female employees with regard to requests for overtime, compensation time, and change of schedule; Plaintiff alleged that Mr. Bosch treated the women more favorably. (Complaint ¶¶ 36, 38; Dkt. No. 29-1 at 3, 7.) Plaintiff's retaliation claim was based on his prior participation as a witness in several EEO complaints against Mr. Bosch for sexual harassment. (Dkt. No. 29-1 at 3.)

When informal EEO counseling did not resolve Plaintiff's grievances, he filed a formal complaint of discrimination with the EEO on February 3, 2012. (*Id.* at 11, 20.) In his formal complaint, Plaintiff identified only gender discrimination as the basis for his claims. (*Id.* at 11.) On February 10, 2012, Plaintiff clarified that he also intended to assert a retaliation claim. (*Id.* at 17.) During the course of administrative proceedings, when the EEO asked Plaintiff whether he wished to include an age discrimination claim, Plaintiff responded that he intended only to assert claims for gender discrimination and retaliation. (*Id.*) Accordingly, in its formal notice responding to Plaintiff's complaint, the EEO indicated that for purposes of its investigation, it was accepting these two claims only. (*Id.* at 20.) The EEO further informed Plaintiff that if he believed it had not correctly identified the claims asserted in his formal complaint, he should contact it in writing within five days to correct any mistakes. (*Id.*)

In April 2012, two months after filing his formal complaint, Defendant terminated Plaintiff's employment. (Complaint ¶ 46; Dkt. No. 29-2 at 10.) Plaintiff subsequently contacted

3

the EEO to amend his complaint to include his termination as an adverse action. (Complaint ¶ 46; Dkt. No. 29-2 at 3.) On April 23, 2012, the EEO sent Plaintiff a letter formally accepting his amendment to the complaint and stating that his termination was now included as a basis for his claims of gender discrimination and retaliation. (Dkt. No. 29-2 at 14.) Again, the EEO informed Plaintiff that he should contact it in writing within five days if he believed it had not correctly identified the claims asserted in his formal complaint. (*Id.* at 15.)

On August 24, 2012, Plaintiff attended and testified at a fact-finding conference regarding his claims and the bases for them. (Complaint ¶¶ 46-47; Dkt. Nos. 29-4, 29-5, 32-1 at 27-44.) On December 27, 2012, the EEO issued a final decision against Plaintiff (Dkt. No. 29-2 at 18); it found that Plaintiff had failed to present evidence that the Army discriminated against him on the basis of his gender or that it retaliated against him for engaging in protected EEO conduct. (Complaint ¶ 48; Dkt. No. 29-2 at 25.) In that decision, the EEO incorrectly advised Plaintiff that he could pursue an appeal with the Merit Systems Protection Board ("the Merit Board"). (Complaint ¶ 48; Dkt. No. 29-2 at 26.) Based on this erroneous representation, Plaintiff filed an appeal with the Merit Board on December 29, 2012. (Complaint ¶ 48; Dkt. No. 29-3 at 2.) On January 24, 2013, the Merit Board issued an order to show cause why Plaintiff's appeal should not be dismissed for lack of subject matter jurisdiction because the Merit Board had no jurisdiction over the claims of an NAF employee. (Dkt. No. 29-3 at 3.) On February 14, 2013, Plaintiff voluntarily withdrew his appeal after the Merit Board notified him that the Army EEO planned to issue a corrected final decision with Plaintiff's proper appeal rights—that is, to correct the language indicating that Plaintiff could appeal to the Merit Board. (*Id.*) Accordingly, the Merit Board dismissed Plaintiff's appeal on February 15, 2013. (Complaint ¶ 49; Dkt. No. 29-3 at 3, 4.) On March 8, 2013, the EEO amended its final decision to advise Plaintiff that he could pursue an appeal with the Equal Employment Opportunity Commission ("EEOC"). (Complaint ¶ 49; Dkt. No. 29-3 at 6.) Plaintiff then filed a timely appeal with the EEOC on April 8, 2013 (Dkt. No. 29-3 at 24), and, in August 2014, the EEOC affirmed the EEO's final decision finding no gender discrimination or retaliation (*id.* at 24, 27).

### III. Procedural History

Plaintiff initiated this action in the United States District Court for the Central District of California on November 14, 2014. (Dkt. No. 1.) The matter was transferred to this District in May 2015. (Dkt. No. 13.) The Complaint brings five causes of action against Defendant in his official capacity as the Secretary of the Army: (1) gender discrimination under Title VII, (2) disability discrimination under the Rehabilitation Act, (3) reprisal under Title VII and the Rehabilitation Act, (4) violation of the FMLA, and (5) violation of the WPA. (Dkt. No. 1.) Defendant now moves the Court to dismiss counts two, four, and five of Plaintiff's Complaint for lack of subject matter jurisdiction. (Dkt. No. 28.)

## LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted).

1   Once the moving party has made a factual challenge by offering affidavits or other evidence to
2   dispute the allegations in the complaint, the party opposing the motion must "present affidavits or
3   any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses
4   subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**DISCUSSION**

6   Defendant offers a number of arguments for dismissal: (1) that Plaintiff's second cause of
7   action under the Rehabilitation Act must be dismissed because Plaintiff failed to exhaust
8   administrative remedies; (2) that Plaintiff's fourth cause of action must be dismissed because Title
9   II of the FMLA, which governs Plaintiff's claim, contains no waiver of sovereign immunity; and
10  (3) that Plaintiff's fifth cause of action under the WPA must be dismissed on several grounds,
11  including sovereign immunity, failure to exhaust administrative remedies, estoppel, and improper
12  venue. The Court addresses each cause of action in turn.

**I.      Second Cause of Action: Rehabilitation Act**

14  Plaintiff's second cause of action alleges that Defendant subjected him to disparate
15  treatment because of an actual or perceived disability; in other words, he argues that the adverse
16  actions at issue in the Complaint constituted disability discrimination in violation of the
17  Rehabilitation Act of 1973, 29 U.S.C. § 791. Defendant argues that this cause of action must be
18  dismissed for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust
19  administrative remedies. The Court agrees.

20  "To establish federal subject matter jurisdiction, [a plaintiff is] required to exhaust [his]
21  administrative remedies before seeking federal adjudication of [his] claims." *E.E.O.C. v. Farmer*
22  *Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). While the Ninth Circuit has long made clear that not
23  all administrative exhaustion requirements are jurisdictional in nature, it has noted that Circuit
24  "case law also holds that *substantial compliance with the presentment* of discrimination
25  complaints to an appropriate administrative agency *is* a jurisdictional prerequisite." *Sommatino v.*
26  *United States*, 255 F.3d 704, 709 (9th Cir. 2001) (first emphasis added). This holds true in the
27  context of Rehabilitation Act claims. *See Leong v. Potter*, 347 F.3d 1117, 1121-22 (9th Cir. 2003)
28  (affirming the district court's determination that it lacked subject matter jurisdiction over the

6

1   plaintiff's Rehabilitation Act claim because the plaintiff failed to exhaust his administrative

2   remedies); *see also Vinieratos v. United States Dep't of Air Force*, 939 F.2d 762, 773 (9th Cir.

3   1991) ("Our holding that appellant failed to exhaust those remedies forecloses any claim to

4   jurisdiction under the Rehabilitation Act.").

5        "The jurisdictional scope of the plaintiff's court action depends on the scope of the EEO[]

6   charge and investigation."[3]  *Leong*, 347 F.3d at 1122.  Ordinarily, "specific claims made in district

7   court . . . must be presented to the EEO[]."  *Id.*  This requirement affords "the agency an

8   opportunity to investigate the charge," provides the "charged party notice of the claim," and

9   "narrow[s] the issues for prompt adjudication and decision."  *B.K.B. v. Maui Police Dep't*, 276

10  F.3d 1091, 1099 (9th Cir. 2002) (internal citation and quotation marks omitted).  In determining

11  the nature of the charge presented, courts rely on the factual statement contained in the plaintiff's

12  administrative complaint.  *See id.* at 1100.  However, federal courts may also consider charges of

13  discrimination not included in the plaintiff's administrative complaint so long as the charges "are

14  like or reasonably related to the allegations made before the EEO[], [or] are within the scope of an

15  EEO[] investigation that reasonably could be expected to grow out of the allegations."  *Leong*, 347

16  F.3d at 1122 (internal citation and quotation marks omitted).  Courts have refused to find that

17  claims are similar or related, and thus refused to exercise jurisdiction, where the claims rely on

18  different theories of discrimination or on different statutes.  *See id.* (holding that an EEOC

19  investigation of discrimination on the basis of race, color, religion, sex, and national origin was

20  not like or reasonably related to a disability discrimination claim under the Rehabilitation Act); *see*

21  *also Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (refusing to construe the

22  plaintiff's race-based discrimination claim to include a disability discrimination claim because the

---

[3] Although the Ninth Circuit most often refers to the scope of the *EEOC* charge and investigation, the Court here instead refers to the scope of the *EEO* charge and investigation given that Plaintiff filed his administrative charge with the EEO and the EEO conducted an investigation.  *See Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973) (noting that courts focus on the "*original* charge" to determine the scope of the agency's investigation, and thus the plaintiff's judicial complaint) (emphasis added); *see also Farmer Bros.*, 31 F.3d at 895-96 (referring to the EEOC because the original charge was filed with the California Department of Fair Employment and Housing, which forwarded the charge to the EEOC for investigation); *Green v. Los Angeles Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1474 (9th Cir. 1989) (same).

"two claims involve[d] totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other"); *Gomez v. Serv. Emps. Int'l Union Local 87*, No. C 10–01888 RS, 2010 WL 4704407, at *4 (N.D. Cal. Nov. 12, 2010) (holding that a properly exhausted claim for national origin discrimination did not exhaust a gender-discrimination claim even though each claim "allegedly flowed from the same factual scenario").

Here, the administrative record before the Court indicates that Plaintiff did not substantially comply with the statutory presentment requirement with respect to a disability discrimination claim: he filed an EEO complaint, but failed to bring a charge of disability discrimination in that complaint. *See Leong*, 347 F.3d at 1122 (affirming dismissal of a Rehabilitation Act claim after a postal worker filed "an EEO[] complaint with no mention whatsoever of disability"). Rather, his administrative complaint raised claims based solely on gender discrimination and retaliation, which Plaintiff appears to concede. Although Plaintiff argues that he simply neglected to check the disability discrimination box, "[t]he crucial element of a charge of discrimination is the factual statement contained [in the complaint]." *See B.K.B.*, 276 F.3d at 1100; *see also Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044, 1051 (9th Cir. 1987) (affirming the district court's determination that the plaintiff failed to exhaust administrative remedies for her sex and age discrimination claims, even though she used the words "sex" and "age" in speaking with the administrative investigator, because the charge she actually filed was only for national origin discrimination). The EEO complaint states only that Plaintiff sought relief because of "[u]nfair treatment due to gender and retaliation/harassment."[4] (Dkt. No. 29-1 at 11.) A claim for disability discrimination is not "like or reasonably related to" the gender discrimination and retaliation claims Plaintiff presented to the EEO because it "relies on a different theory and a different statute." *See Leong*, 347 F.3d at 1122 (comparing, among other

---

[4] Although courts "construe the language of EEO[] charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading," *B.K.B.*, 276 F.3d at 1100 (internal citation and quotation marks omitted), Plaintiff's factual statement makes "no mention whatsoever of disability," *Leong*, 347 F.3d at 1122.

things, claims for disability and gender discrimination). Just as in *Leong*, because "[d]isability discrimination was not investigated by the EEO[], and such an investigation could not have been reasonably expected to grow out of [Plaintiff's] charges," Plaintiff failed to exhaust his administrative remedies for his claim under the Rehabilitation Act. *See id.*

That the EEO cannot have been reasonably expected to investigate a disability discrimination claim is evident because the entire administrative record is devoid of any mention of disability or disability discrimination. Plaintiff does not dispute that: (1) his informal counseling complaint did not assert a claim for disability discrimination (*see* Dkt. No. 29-1 at 3); (2) the statement of facts he submitted and the information he provided to an EEO counselor during informal interviews did not identify disability discrimination as a basis for his claims (*see id.* at 3, 7); (3) the factual statement he attached to his formal EEO complaint made no mention whatsoever of disability (*see id.* at 14-15); (4) he "never attempted to amend his EEO[] charge to reflect his Rehabilitation Act claim," *Leong*, 347 F.3d at 1122, even though he formally amended his EEO complaint after Defendant terminated his employment (Dkt. No. 29-2 at 3); (5) he answered the EEO's inquiry about alternative claims by denying that he was asserting a claim for age discrimination (*see* Dkt. No. 29-1 at 17); (6) he never responded to written correspondence from the EEO advising him to correct any mistakes about the nature of his claims (*see* Dkt. Nos. 29-1 at 20, 29-2 at 15); (7) both administrative decisions mention only gender discrimination and retaliation as the bases for his claims (*see* Dkt. Nos. 29-2 at 18, 29-3 at 24); and (8) his testimony at his fact-finding conference makes no mention whatsoever of disability or disability discrimination (*see* Dkt. Nos. 29-4, 29-5, 32-1 at 27-44).[5] Although Plaintiff alluded to "sick leave," "health problems," and "medical stuff" during his testimony (Dkt. Nos. 29-5 at 2, 32-1 at 43:6-7 and 43:19-23), his statements are insufficient to put the EEO on notice that he intended to

---

[5] During the fact-finding conference, Plaintiff had the opportunity to, but did not, correct any mistakes about the nature of his claims. (*See* Dkt. No. 32-1 at 28:9-23 ("The claims that are currently under investigation are: Was [Plaintiff] discriminated against on the basis of sex (male) and reprisal (previous Title 7 activity) . . . [I]s that an accurate reflection of the issues and bases in your current complaint?").)

1  allege disability as a basis for a discrimination claim.[6] *See Tillman v. City & Cnty. of San*

2  *Francisco*, No. C 09–01832 WHA, 2009 WL 3349542, at *3 (N.D. Cal. Oct. 15, 2009) (holding

3  that the plaintiff's reference to her previous lawsuit for disability, race, and gender discrimination

4  in her administrative charge was not sufficient to exhaust her administrative remedies regarding

5  her Fair Employment and Housing Act claim for disability discrimination).

6        Plaintiff's next argument—that he exhausted his administrative remedies based on a

7  chronological summary of facts he submitted at the administrative appeal stage—fares no better.[7]

8  The summary does not contain any variation of the word "disabled" or "disability." While the

9  summary does state that Plaintiff was "subjected to disparate treatment for unforeseen

10 circumstances beyond [his] control such as family and medical emergencies" (Dkt. No. 30-1 at

11 39), these snippets refer to the disparate treatment he received because of Defendant's retaliation,

12 that is, Defendant treated him differently following his medical and family emergencies because of

13 the retaliation. They are insufficient to suggest that Plaintiff was disabled or perceived as such, let

14 alone put the EEO on notice that Plaintiff intended to pursue a claim for disability discrimination.

15 *See Tillman*, 2009 WL 3349542, at *3. Plaintiff has not met his burden of demonstrating that he

16 exhausted a claim for disability discrimination. The claim therefore must be dismissed.

17       Plaintiff's remaining arguments to the contrary are unpersuasive. Not only does Plaintiff

18 fail to address the Ninth Circuit case law Defendant cites, but he cites a district court case from

---

[6] "[T]he [EEO] charge is intended to satisfy the *dual* purpose of establishing notice of the complainant's claims both to the agency *and* to the named respondent." *B.K.B.*, 276 F.3d at 1101 (emphasis in original).

[7] Plaintiff argues that he attempted to submit the summary at the initial phase of his case, but the EEO investigator refused to accept it at his fact-finding conference on August 24, 2012. (Dkt. No. 30-3 ¶ 5.) However, given that the summary is dated March 8, 2013 (Dkt. No. 30-1 at 43)—over two months after the EEO's final decision—and given that the investigator invited Plaintiff to submit additional documents for the record and advised him that anything he submitted to her she placed in the record (Dkt. No. 32-1 at 33:19-34:4, 34:14-15), the Court construes the summary as not being submitted until Plaintiff's administrative appeal. In any event, assuming as true Plaintiff's testimony that he did try to submit the summary before his administrative appeal, the administrative record demonstrates that Plaintiff did not submit the summary until after he had filed his formal administrative complaint in February 2012. Therefore, Plaintiff's untimely summary cannot exhaust a claim for disability discrimination. *See, e.g.*, *Rodriguez*, 265 F.3d at 899 (finding that the plaintiff's timely administrative complaint failed to "offer an adequate factual basis to support a charge of disability discrimination, and thus fail[ed] to warrant relation back of the untimely amended charge").

1    Kansas that does not support his argument, *Agnew v. Achievement Services of Northeast Kansas*,
2    No. 13–CV–2024–EFM, 2013 WL 3895316 (D. Kan. July 29, 2013). Indeed, the case seems to
3    stand for the same proposition that "[t]he crucial element of a charge of discrimination is the
4    factual statement contained [in the administrative complaint,]" *B.K.B.*, 276 F.3d at 1100, and, as
5    noted above, Plaintiff's narrative in his administrative charge does *not* allege sufficient facts to put
6    the EEO on notice of a disability discrimination claim. The other cases Plaintiff cites pertain to
7    whether a plaintiff can exhaust a claim by presenting it in an untimely amended administrative
8    complaint that relates back to a timely original administrative complaint. These cases similarly do
9    not support Plaintiff's argument because he never brought an administrative charge—timely or
10   not—for disability discrimination and, as discussed above, the summary's fleeting reference to
11   "medical emergencies" and the like is insufficient to put the EEO on notice that Plaintiff intended
12   to pursue a claim for disability discrimination.
13          Lastly, the exhibits Plaintiff attaches to and cites in his opposition brief are not helpful:
14   Exhibit B contains letters regarding Plaintiff's notice of proposed removal, notice of decision of
15   termination, and the EEO's final decision (Dkt. No. 30-1 at 45-47); Exhibit C is a letter from the
16   EEO formally accepting Plaintiff's amendment to include his termination as an adverse action in
17   his administrative complaint (*id.* at 49-51); Exhibit D is an email regarding Mr. Bosch's
18   inappropriate contact with Plaintiff's doctor (Dkt. No. 30-2 at 3); and Exhibit E is a letter from the
19   EEOC updating Plaintiff on the status of his appeal (*id.* at 5). None of these documents refer to
20   disability or disability discrimination, and thus none support Plaintiff's argument that he exhausted
21   such a claim.
22          The Court finds that it lacks subject matter jurisdiction of Plaintiff's Rehabilitation Act
23   disability discrimination claim.
24   **II.      Fourth Cause of Action: Family Medical Leave Act**
25          In the fourth cause of action, Plaintiff alleges that Defendant retaliated against Plaintiff
26   because Plaintiff was eligible for, and requested use of, protected medical leave under the FMLA.
27   Defendant argues that this cause of action must be dismissed for lack of subject matter jurisdiction

because Plaintiff's FMLA rights arise under Title II of the statute, which does not provide for a private right of action. Again, the Court agrees.

"It is axiomatic that the United States can be sued only to the extent that it has waived its sovereign immunity." *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Id.* (internal citation and quotation marks omitted). Because sovereign immunity is a jurisdictional issue, *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), the burden is on the plaintiff to establish that there exists an applicable waiver, *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987).

The FMLA grants private and federal employees family and temporary medical leave under certain circumstances. *See* Pub. L. No. 103-3, 107 Stat. 6 (Feb. 5, 1993); *Russell v. United States Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999). "Title II of the FMLA, 5 U.S.C. [§§ 6381-6387], governs leave for federal civil service employees with more than twelve months of service; Title I, 29 U.S.C. [§§ 2601-2654], governs leave for private employees and federal employees not covered by Title II." *Russell*, 191 F.3d at 1018. "While Title I and Title II employees under the FMLA are afforded equivalent rights to leave time, Title I expressly provides a private right of action to remedy employer action violating FMLA rights. *See* 29 U.S.C. § 2617(a)(2). Title II contains no analogous provision. *See* 5 U.S.C. §§ 6381-6387." *Id.* Thus, sovereign immunity bars FMLA suits by Title II employees. *Id.* The Court therefore lacks jurisdiction of Plaintiff's FMLA claim if he was a Title II federal employee.

At oral argument, Plaintiff conceded that Defendant would be immune from suit if Plaintiff were a Title II employee. Although the statutory scheme is difficult to navigate, a careful analysis demonstrates that Plaintiff *is* a Title II employee and therefore cannot bring this cause of action. As noted above, Title II of the FMLA is codified at 5 U.S.C. §§ 6381-6387, also referred to as subchapter V of chapter 63 of Title 5. Section 6381 defines an "employee" for purposes of Title II; that section states that an "employee" is "any individual who . . . has completed at least 12 months of service as an employee[,] . . . as defined by section 6301(2)." 5 U.S.C. § 6381(1). Section 6301(2) then states that an "employee" is "an employee as defined in section 2105 of this title[.]" 5 U.S.C. § 6301(2). In turn, section 2105 states that "[a]n [NAF] employee . . . is deemed

12

*not* an employee for the purpose of laws administered by the Office of Personnel Management, *except* . . . subchapter V of chapter 63," which is Title II of the FMLA. 5 U.S.C. § 2105(c)(1)(E) (emphasis added). *See also Russell*, 191 F.3d at 1018 n.1 (discussing how to define an "employee" under Title II of the FMLA, which is comprised of a "series of nested definitions"). In other words, under Title 5, NAF employees are *only* "employees" for the specific purposes enumerated in section 2105, including Title II of the FMLA. Title II of the FMLA thus governs leave for NAF employees. Because Plaintiff concedes that he was such an employee at all times relevant to this suit (Complaint ¶¶ 3, 7), his FMLA rights arise under Title II. *See* 5 U.S.C. §§ 2105(c)(1)(E), 6381.

Although the inquiry could end here, other documents further support Plaintiff's classification as a Title II employee.[8] For instance, the Department of Defense's civilian employee handbook states the following: "NAF employees are covered by sections 6381 through 6387," which refer to Title II (Dkt. No. 32-2 at 16); "[e]mployees in both Regular and Flexible category continuing positions (i.e., positions without a documented time limitation, or a 'not-to-exceed' date) who have completed at least 12 months of service are covered by chapter 63, subchapter V [Title II of the FMLA]" (*id.* at 17); and "NAF employees serving in a Flexible appointment with a stated time limitation or not-to-exceed date of 1 year or less are subject to the provisions of chapter 28 [Title I of the FMLA]" (*id.*). Moreover, an Army memorandum regarding FMLA policies for NAF policies states the following: "[the Department of Defense handbook] administratively extends [the Office of Personnel Management's] FMLA regulations to NAF employees in regular and flexible continuing positions covered under Title II of the FMLA" (*id.* at 23); and "NAF employees serving under a flexible appointment with a stated time limitation or 'not to exceed' date of one year or less are subject to the provisions of Title I of the FMLA" (*id.* at 24). Because Plaintiff concedes that he was an NAF employee with no time limitation, these

---

[8] In his opposition brief, Plaintiff attaches and cites to Exhibit K in support of his argument that he is a Title I employee. Given that Exhibit K only pertains to occupational health and safety violations, the Court construes Plaintiff's brief as citing to Exhibit J, which is an amendment to the Army's NAF Personnel Policy. Exhibit J is not helpful either; it merely incorporates the FMLA and makes no mention of whether Title I or Title II applies to NAF employees. (*See* Dkt. No. 30-2 at 29, 31-32.)

13

1   documents and the text of the FMLA itself demonstrate that Plaintiff's FMLA rights arise under

2   Title II.

3         Plaintiff's remaining arguments to the contrary are unavailing.  Plaintiff's opposition brief

4   focuses primarily on stating a claim under the FMLA—he discusses his eligibility, Defendant's

5   responsibilities, the types of employer liability, and an employee's equitable remedies under the

6   FMLA—but no such claim is available for an NAF employee.  Therefore, Plaintiff's claim must

7   be dismissed for lack of subject matter jurisdiction.  *See Russell*, 191 F.3d at 1018; *see also*

8   *Ibrahim v. Def. Language Inst. Foreign Language Ctr.*, No. 15-cv-00336-PSG, 2015 WL

9   7272750, at *3 (N.D. Cal. Nov. 18, 2015) (holding that the plaintiff's FMLA rights arose under

10  Title II, which precluded the suit).

11  **III.**    **Fifth Cause of Action: Whistleblower Protection Act**

12        Plaintiff's fifth cause of action alleges that Defendant violated the WPA when it engaged

13  in retaliatory conduct and ultimately terminated Plaintiff's employment after Plaintiff raised

14  concerns about the Hacienda's operations.  Although Defendant argues that this cause of action

15  must be dismissed for four reasons, the Court addresses only the first two reasons: sovereign

16  immunity and exhaustion of administrative remedies.[9]

17        As explained above, "[a]bsent [the plaintiff showing] a waiver, sovereign immunity shields

18  the Federal Government and its agencies from suit."  *F.D.I.C.*, 510 U.S. at 475; *see also Baker*,

19  817 F.2d at 562.  The WPA provides federal employees an individual right of action for being

20  subjected to certain retaliatory conduct.  *See* 5 U.S.C. §§ 1221(e)(1), 2302(b)(8).  A whistleblower

21  "bears the burden of showing that [he first] sought corrective action from the [Office of Special

22  Counsel]," followed by the Merit Board.  *Briley v. Nat'l Archives & Records Admin.*, 236 F.3d

23  1373, 1377 (Fed. Cir. 2001); *see also* 5 U.S.C. § 1214(a)(3).  With one exception, the Federal

---

[9] Specifically, Defendant argues that this cause of action must be dismissed because: (1) an NAF employee such as Plaintiff does not have a right to sue under the WPA; (2) Plaintiff failed to exhaust administrative remedies, as he never presented a claim to the Office of Special Counsel or appealed to the Merit Board; (3) Plaintiff abandoned the only procedural path in which he could bring a WPA claim when he voluntarily dismissed his appeal with the Merit Board; and (4) venue is not proper in this District.

Circuit has exclusive jurisdiction to review the Merit Board's decisions. *See* 5 U.S.C. § 7703(b)(1)(A); *see also Coons v. Sec'y of the United States Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) ("Although appeals of [Merit Board] decisions generally must be filed in the Federal Circuit Court of Appeals, district courts have jurisdiction to review 'mixed' cases, in which an action involves both a [Merit Board] appeal and a discrimination claim."). Where a whistleblower fails to exhaust administrative remedies, the Federal Circuit lacks subject matter jurisdiction. *Willis v. Dep't of Agric.*, 141 F.3d 1139, 1144 (Fed. Cir. 1998).

   Given that the Federal Circuit has nearly exclusive jurisdiction over Merit Board appeals, few circuits have addressed the issue of whether NAF employees have a right to appeal to the Merit Board. The Ninth Circuit is among the circuits that have not. Nevertheless, the circuits that have addressed the issue all agree that NAF employees may not pursue appeals with the Merit Board. *See Clark v. Merit Sys. Prot. Bd.*, 361 F.3d 647, 651 (Fed. Cir. 2004) (affirming the Merit Board's decision that it lacked subject matter jurisdiction over NAF employee claims); *see also Perez v. Army & Air Force Exch. Serv.*, 680 F.2d 779, 787 (D.C. Cir. 1982) (affirming that the Civil Service Reform Act does not confer jurisdiction on the Merit Board to hear appeals brought by NAF employees). With regard to WPA claims in particular, the Merit Board has held, and the Federal Circuit has affirmed, that NAF employees do not have rights of appeal to the Merit Board because the WPA applies only to "employees" as defined in 5 U.S.C. § 2105(c), which excludes NAF employees "for the purpose of . . . laws administered by the Office of Personnel Management." *See* 5 U.S.C. § 2105(c); *see also Merit Sys. Prot. Bd.*, 361 F.3d at 651 (affirming that NAF employees have no right to appeal to the Merit Board for alleged violations of the WPA); *Clark v. Army & Air Force Exch. Serv.*, 57 M.S.P.R. 43, 46 (1993) (holding that the plaintiff was "not covered by the WPA because he [was] excluded from the definition of employee under 5 U.S.C. § 2105(c)"); *Taylor v. Dep't of the Navy*, 1 M.S.P.R. 591, 592-95 (1980) (finding that adverse action provisions of Title 5 are laws administered by the Office of Personnel Management for purposes of 5 U.S.C. § 2105).

1   Plaintiff was an NAF employee. He thus cannot pursue a claim under the WPA.[10] In
2   addition, Plaintiff did not substantively respond to Defendant's argument on this point. Such
3   failure to respond to Defendant's argument could be deemed a concession that the Court lacks
4   jurisdiction to hear his WPA claim. *See Ardente v. Shanley*, No. 07–4479 MHP, 2010 WL
5   546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore
6   concedes it through silence.").

7   In any event, Plaintiff concedes that he failed to exhaust his administrative remedies for
8   this claim. As an initial matter, Plaintiff was required to, but did not, seek relief in the Office of
9   Special Counsel. Further, Plaintiff acknowledges that he was required to seek review of his WPA
10  claim by the Merit Board, but that he dismissed his appeal with the Merit Board. Plaintiff urges
11  the Court to nevertheless consider his claim in light of "special factors," but Plaintiff cites no case
12  holding that a court may allow an unexhausted WPA claim to proceed, especially where the cause
13  of action is unavailable in the first instance. Plaintiff's claim under the WPA must therefore be
14  dismissed for lack of subject matter jurisdiction based on his inability to sue under the WPA, and
15  alternatively, on his failure to exhaust administrative remedies.

### IV. Leave to Amend

Courts should grant plaintiffs leave to amend to cure jurisdictional defects unless the amendment would be futile. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). With respect to the fifth cause of action only, Plaintiff seeks leave to state a First Amendment claim under *Bivens v. Six Unknown Named Agents*, which allows courts to imply a cause of action when plaintiffs otherwise have no statutory redress against federal officials who violated their constitutional rights. *See* 403 U.S. 388 (1971). Specifically, Plaintiff alleges that Defendant infringed his First Amendment rights by incorrectly advising Plaintiff of his

---

[10] The administrative record reflects the Merit Board's agreement with the Court's conclusion that Plaintiff, as an NAF employee, does not have a right to sue under the WPA. (*See* Dkt. No. 30-2 at 12 ("[O]nce it became apparent that he was [an NAF employee] . . . [Plaintiff] was notified that it did not appear the [Merit] Board had jurisdiction over the appeal . . . "); *id.* at 20, 23 ("Judge Carter expressed her concern that the [final agency decision] advised [Plaintiff] to file any appeal with the [Merit Board]; in spite of the fact that he is a[n] NAF employee and not considered an "employee" for purposes of the [Merit Board under 5 U.S.C. § 7511(a)(1)].").

16

administrative appeal rights and subsequently moving to dismiss Plaintiff's appeal to the Merit Board.

Plaintiff's ability to amend is "governed by Rule 16(b), not Rule 15(a)[,]" because he sought to add a new claim after the leave-to-amend deadline set forth in the Court's scheduling order.[11] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Rule 16(b) requires the party seeking the amendment to show good cause, which "primarily considers [that party's] diligence . . . ." *Id.* at 609. Plaintiff has failed to show diligence, let alone any cause, for seeking the proposed amendment. The Court therefore denies Plaintiff leave to amend to state a First Amendment claim in lieu of his WPA claim.[12] *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000) (holding that the district court properly denied leave to amend after the deadline for amending the pleadings had expired and the plaintiffs offered no explanation for failure to amend earlier); *Zamora Zamora v. City of San Francisco*, No. 12–cv–02734 NC, 2013 WL 4529553, at *2 (N.D. Cal. Aug. 26, 2013) (denying leave to amend where the plaintiffs sought to amend their complaint but made no attempt to demonstrate good cause for having missed the

---

[11] The scheduling order provided that "Plaintiff shall advise Defendant by October 9, 2015 as to whether Plaintiff intends to amend the complaint in response to Defendant's arguments for dismissal. If Plaintiff chooses to amend the complaint, any new legal claims must be included therein and any such amended complaint shall be filed by October 23, 2015." (Dkt. No. 27.)

[12] Although Plaintiff's request could be denied on this ground alone, the Court additionally notes that no *Bivens* remedy is available for "a federal civil servant [who was] the victim of a retaliatory demotion or discharge because he . . . exercised his First Amendment rights." *Bush v. Lucas*, 462 U.S. 367, 381 (1983). This is so because "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed." *Id.* at 385. Plaintiff thus cannot bring a First Amendment claim because he has other administrative remedies available to him. *See id.*; *see also Ardalan v. McHugh*, No. 13–CV–01138–LHK, 2013 WL 6212710, at *10 (N.D. Cal. Nov. 27, 2013) (relying on *Bush* to conclude that the plaintiff had no *Bivens* cause of action for her First Amendment claim). It is true that NAF employees such as Plaintiff cannot sue under the WPA; Plaintiff nonetheless has other remedies available because he brought a claim for retaliation in his third cause of action, which Defendant is not seeking to dismiss, and the Department of Defense has created rules and administrative procedures to protect NAF employees from reprisal. *See* 10 U.S.C. § 1587; *see also Merit Sys. Prot. Bd.*, 361 F.3d at 652 ("[U]nder 10 U.S.C. § 1587, NAF employees are protected from reprisal for whistleblowing pursuant to procedures adopted by the Secretary of Defense, and subject to appeal to the Secretary of Defense.").

1  deadline to amend by two months).

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss with prejudice. Specifically, the Court dismisses Plaintiff's: Rehabilitation Act claim for failure to exhaust administrative remedies; FMLA claim because Plaintiff is a Title II employee with no private right of action; and WPA claim because NAF employees cannot sue under the WPA and, in any event, Plaintiff failed to exhaust administrative remedies. In addition, the Court denies Plaintiff leave to amend to add a First Amendment claim under *Bivens*.

**IT IS SO ORDERED.**

Dated: December 16, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge